WELLS, Respondent, vs. SANGER & OTHERS, Appellants.

1. The supreme court will not reverse for excessive damages, unless they are so exorbitant as at first blush to show malice or improper bias.
2. Suprise of a defendant by the unexpected close of plaintiff's case, no ground for a new trial.
3. Newly discovered cumulative evidence no ground for a new trial.

*Appeal from Callaway Circuit Court.*

The case is stated in the opinion of the court.

*Gardenhire*, for appellants.   1. The verdict was obtained by the fraud of the plaintiff in suppressing the truth, and should be set aside.   2. The damages are excessive.   (15 Mass. 365. 4 Mass. 1.   16 Pick. 541.   13 Mo. 427.   5 Mo. 205.)   3. The surprise of the defendant at the trial is a ground for setting aside the verdict.   (Practice Act, art. 11, § 3.   1 A. K. Marsh. 334.   2 McCord, 313.   3 McCord, 258.   9 Dana, 134.   25 Wend. 263.   1 Iowa, 134.   7 Monroe, 59.   2 Sm. & M. 313.)   4. The newly discovered evidence was good cause for a new trial.   (7 Metcalf, 478.   18 Vermont, 460.   20 Conn. 305.)

*P. R. Hayden, J. W. Morrow* and *J. F. Jones*, for respondent.

RYLAND, Judge, delivered the opinion of the court.

This was an action by plaintiff against Sanger & Burnell, part owners of a stage coach, for injuries received by the plaintiff from the upsetting of the coach in which the plaintiff was at the time a passenger.

Wells *v.* Sanger.

During the progress of the case in the court below, the defendant, Burnell, died, and Preston B. Reed, the administrator of his estate, was duly made a party defendant.

The case was tried by a jury in the Callaway Circuit Court, at the April term, 1855, and a verdict rendered for the plaintiff for eleven hundred dollars. A motion was made by defendants for a new trial, which being overruled, they bring the case here by appeal.

The refusal of the Circuit Court to grant a new trial is the principle ground relied upon here by the defendants for a reversal of this judgment. They contend that the verdict was obtained by fraud, and also that the damages are excessive.

The plaintiff, in his petition, stated that, by the overturning and upsetting of the defendants' stage, he had his right shoulder and shoulder-blade, and three of his ribs broken, fractured and mashed; and that he was also, in other respects, greatly hurt, bruised and wounded, by means of the turning over and upsetting of the said stage coach.

On the trial before the jury, the great struggle seemed to be, to show when the injuries to the plaintiff were in reality received by him. The defendants contended, and endeavored to show to the jury, that the plaintiff received the injuries in the state of Ohio, before he started to Missouri, by means of his riding horse falling down with the plaintiff and fracturing his shoulder, and dislocating it; and that the injuries stated in his petition were not received by him by the overturning and upsetting of the defendants' stage coach, but by the fall of the horse. The plaintiff endeavored to show a complete recovery from the effects of the fall of his horse, and that the overturning of the stage was the cause of his injuries. The proof showed that the stage driver was drunk, and that he overturned the stage in a level piece of prairie, with some seven or eight passengers, besides the plaintiff, in it. The plaintiff complained very much of the injuries received at the time. The defendants contended that this was a fraud on the part of the plaintiff, in order to recover from them compensation for injuries which he

had previously received, and which the defendants did not, in the least, contribute to inflict. This matter was put before the jury by both parties. The defendants produced some ten or twelve depositions from persons in Ohio, showing the state of the plaintiff in regard to the injury received from the fall of the horse, and what he said about his situation in reference to said injuries ; the plaintiff proved his ability to work after the fall, his assisting in shucking corn ; his helping to unload the steamboat at St. Louis, by carrying from it to the wharf pig iron : this was on his way out to Missouri, and shortly before he started up in the stage of the defendants.

Many instructions were given by the court, at the motion of the parties ; one of which, given for defendants, and numbered 5, is as follows : " If the jury believe from the evidence, that the injury complained of by the plaintiff was occasioned by the fall from a horse or otherwise, in the state of Ohio, previous to his coming to this state, and that plaintiff was still suffering from the effects of said injury when the stage was upset, and that plaintiff received no additional injury thereby, then they will find for defendants ; and if any additional injury was received in consequence of said upsetting, then they will find only such damages as will compensate said plaintiff for such additional injury."

This instruction placed before the jury, properly, the fact of a previous injury, and directed them not to give damages for such previously received injury, if they should be of opinion there was such, and to give damages only for such additional injuries as were received by the upsetting of the stage. This matter, then, in which the defendants allege the plaintiff's fraud to consist, was brought out and placed before the jury ; it was left open for them to consider and pass upon it.

Had this matter of the fall of the horse in Ohio, and the previously received injury of the plaintiff, not been before the jury—not been brought out by a vigilant, searching inquiry into its nature and extent, and fully placed before the jury, with proper and liberal instructions in regard to it by the court,

the defendants might very properly complain of the plaintiff's conduct, in saying nothing about the previous fall in Ohio. But, surely, there is now no reason, on this score, for the clamor raised by them of fraud. They knew the whole matter, and put it before the jury, and they complain because the plaintiff did not tell them about it. Would their having learned this matter from the plaintiff have enabled the defendants to use more diligence in procuring proof of it? Suppose the plaintiff felt himself entirely recovered from the effects of the fall in Ohio, before the upsetting of the stage, was he morally bound to tell that he had been injured before in the same shoulder, but had recovered from it? We cannot say that this judgment was obtained by fraud. Although the plaintiff may have been willing to conceal from the defendants all previous injuries; nay, may have been disposed to recover from the defendants for injuries which the defendants had no hand in inflicting on him, and in doing this may have acted in bad faith, yet the defendants were informed of the previous injury, and brought it out by a large amount of testimony, and procured an instruction properly enabling the jury to do justice to the defendants by their verdict. There is nothing, then, in this objection, or in this point, which, in our opinion, will warrant this court in disturbing the judgment below.

1. As to the excessive damages, there is nothing which will justify the interference of this court, on this ground, as presented by the record before us. The jury is the proper tribunal to assess the requisite damages in cases of this character; and, unless their estimate be an exorbitant one, or such an one as at first blush would appear the offspring of malice, or exceedingly improper bias on their part, the courts have invariably refused to correct the verdict by granting a new trial. (*Fallenstein* v. *Boothe*, 13 Mo. Rep. 429.)

Where the amount of damages is matter of opinion merely, a new trial will not be granted for excessive damages, unless flagrantly excessive. On this ground, we do not think this court authorized to interfere. Here, the damages are merely

matter of opinion. We cannot say they are excessive. The danger to human life, by the employment of drunken agents, engineers and drivers, on our railroads, steamboats and stage coaches, is imminent indeed. The amount of human suffering arising from the employment of such, is necessarily great; and when a case is presented before the courts and juries of the country, it is not surprising that liberal damages should be awarded to the sufferer. There can be little excuse, indeed, for such small regard to human beings, as that manifested in this case. Here, the driver, by his drunkenness, managed to turn over a stage, loaded with men, women and children, on a level, smooth prairie, free from obstructions of every kind— too drunk to guide his team. The employers, in business so important to the public as that of common transportation of men and property along our public highways, will, in time, be taught, by the honest jurymen of the country, that it is the worst economy to engage such employees.

2. The surprise on the part of the defendants, occasioned by the unexpected close of the case, by the plaintiff, without his examining all the witnesses summoned on his part, and thereby depriving the defendants of the testimony of their witness, Mrs. Lee, who reached the place of holding court after the argument of the case had been closed, and the case submitted to the jury, is more a mattter of misfortune to the defendants than fault on the part of the plaintiff, or of error on the part of the court.

The defendants knew their witness was absent; they did not ask that the case might be postponed for a time, or for a continuance of it, but trusted to the chances of having their witness ready in time; in this they were disappointed. It was competent for the plaintiff to stop when he had made out his case, as he supposed; nor could the defendants object. It is within the discretion of the court to hold its sessions in the night time for the dispatch of business and the convenience of parties, jurymen and witnesses. This is often done; nor can it afford just cause of complaint to the defendants in this case. They knew that their witness was not in attendance; they cal-

culated to have her ready in time, and would have succeeded in their expectations if the plaintiff had taken more time to examine his witnesses, and the court had not held its sessions in the night time. These were matters on which the defendants had no right to base calculations. Having run the risk, they cannot be permitted to complain after it turns out contrary to their expectations. Mrs. Lee's evidence, as appears from the affidavit of the defendants' agent, would have been on the subject of the situation of the plaintiff before the upsetting of the stage ; it would have been on the same subject on which the jury passed ; it was cumulative ; it might have been stronger and more satisfactory to the jury, but still it is cumulative. However, on the other ground, there is no cause for this court to interfere by reversing and ordering a new trial. The Circuit Court had the whole transaction before it, and could well see if there had been any thing wrong or prejudicial to the defendants in this matter, and could have remedied the injury, if any, by a new trial.

3. As to the last remaining point, the newly discovered evidence, that is also against the defendants.

This evidence is what may be called cumulative, and upon the subject of newly discovered evidence, as the ground for a new trial, the law is well settled. (4 Bibb, 563. 2 A. K. Marsh. 348. 12 Mo. Rep. 57.) In the case of *Beauchamp* v. *Sconce,* (12 Mo. Rep. 57,) this court held that cumulative evidence, that is, evidence of the same import as that given upon the trial, was not sufficient to authorize the court to grant a new trial, because such a practice would inevitably lead to fraud, subornation, delay and vexatious uncertainty. This is in accordance with the general rule. In the case of *Smith* v. *Brush et al.*, (3 Johns. 84,) the court held, that, where the new testimony alleged to be discovered does not relate to any new fact, but goes to corroborate what a witness had previously stated, was not a sufficient cause for granting a new trial. The language of the court is, " but it is against the general rule to grant a new trial, merely for the discovery of cumulative facts

and circumstances relating to the same matter, which was prin-cipally controverted upon the former trial." See also 15 Johns. 212. There are exceptions to this general rule. In actions of ejectment, relative to the lands in the military tract, in New York, where the principle or turning point in the case is the identity of the soldier entitled to the bounty land—there, newly discovered testimony, though cumulative, has been frequently held sufficient to grant new trials ; the court stating, " these cases are peculiar, and not to be strictly governed by the rules adopted in ordinary cases." See *Jackson* v. *Crosby*, (12 Johns. 354. 8 Johns. 489.)

Upon the whole record in this case, we cannot see any cause for the interference of this court with the judgment below ; it is therefore affirmed ; Judge Scott concurring ; Judge Leonard not sitting, having been of counsel in the court below.